UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

IN RE:

CYBERCO HOLDINGS, INC.,

    Debtor.
_____/

BANK MIDWEST, N.A..,

    Plaintiff,

v.

CYBERCO HOLDINGS, INC., et al.,

    Defendants.
_____/

Bankruptcy Court Case No. 04-14905
Chapter 7

Adversary Proceeding
No. 05-80020-JRH

Case No. 1:05-CV-566

HON. GORDON J. QUIST

## OPINION

Now before the Court is Bank Midwest, N.A.'s ("Bank Midwest") motion pursuant to 28 U.S.C. § 157(d) and Rule 42(a) of the Federal Rules of Civil Procedure to withdraw reference to the bankruptcy court and to consolidate with another district court case. Thomas C. Richardson, the Chapter 7 Trustee ("Trustee") for Cyberco Holdings, Inc., has filed a response opposing the motion, and Management Services Realty, Inc. has filed a concurrence in the Trustee's response. For the reasons set forth below, the Court will deny the motion.

### I. Background

On November 29, 2004, Bank Midwest filed a complaint in this Court, captioned <u>Bank Midwest, N.A. v. Cyberco Holdings, Inc., et al.</u>, No. 1:04-CV-795 ("Case No. 1:04-CV-795"),

against Cyberco Holdings, Inc. ("Cyberco"), James M. Horton ("Horton"), Teleservices Group, Inc. ("Teleservices"), and Krista Watson ("Watson"). Bank Midwest alleged state law claims of breach of contract, breach of guaranty, fraud, claim and delivery, and conversion arising out of Bank Midwest's transfer of more than $4.9 million to Teleservices pursuant to a loan agreement with Cyberco. In addition to other relief, Bank Midwest requested the imposition of a constructive trust on the funds that the defendants fraudulently obtained from Bank Midwest. Subsequently, the Court granted Bank Midwest's motions for expedited discovery which, apparently, allowed Bank Midwest to discover the persons to whom the funds were transferred and the bank accounts into which the funds were deposited.

On December 9, 2004, an involuntary Chapter 7 bankruptcy petition was filed against Cyberco in this district. An involuntary bankruptcy petition was filed against Watson on December 30, 2004, in this district. On January 14, 2005, Bank Midwest filed an adversary proceeding (the "Adversary Proceeding") in Cyberco's bankruptcy case against twelve defendants, including Cyberco, Teleservices, and Horton. Bank Midwest's complaint in the Adversary Proceeding was similar to its complaint in Case No. 1:04-CV-795 in most respects, except that it alleged only fraud but contained additional allegations tracing the funds to various Defendants and their banks.

On January 21, 2005, Teleservices and Cybernet Asia Pacific, Ltd. ("CAP"), another defendant in the Adversary Proceeding, filed voluntary bankruptcy petitions in this district. On June 6, 2005, Bank Midwest filed motions for relief from the automatic stay in both the Teleservices and CAP bankruptcy cases for the purpose of allowing Bank Midwest to continue to pursue its claims against Teleservices and CAP in the Adversary Proceeding. The bankruptcy court denied the motions without prejudice "for the reasons set forth on the record" in orders dated July 20, 2005.

Because there is no transcript of the hearing, this Court has no way to ascertain the bankruptcy court's reasons for denying the motions. Bank Midwest asserts that the bankruptcy court ruled that Bank Midwest must file separate adversary proceedings in the separate bankruptcy cases, while the Trustee claims that the bankruptcy court felt that there was no need for a lift of stay given that the Adversary Proceeding is pending before the bankruptcy court. Bank Midwest filed the instant motion on July 29, 2005, following the bankruptcy court's denial of its motions for relief from the automatic stay. On September 6, 2005, after the bankruptcy court transmitted the instant motion to this Court, this Court entered an Order administratively closing Case No. 1:04-CV-795 with regard to Cyberco, Teleservices, and Watson, in light of their respective bankruptcy cases.

In addition to Case No. 1:04-CV-795, which, at this time is pending only against Horton, the Court has before it several forfeiture actions filed by the United States which concern the funds Bank Midwest transferred to Teleservices on behalf of Cyberco.

## II. Discussion

In accordance with 28 U.S.C. § 157(a), cases under Title 11 and proceedings arising under, or arising in or related to, a Title 11 case are referred to the bankruptcy judges of this district. See W.D. Mich. LCivR 83.2(a). However, a "district court may withdraw, in whole or in part, any case or proceeding referred under [§ 157], on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The party seeking withdrawal bears the burden of showing sufficient cause. See In re Am. Capital Equip., LLC, 324 B.R. 570, 573 (W.D. Pa. 2005); Good v. Kvaerner U.S. Inc., No. 1:03-CV-0476 SEB-VSS, 2003 WL 21755782, at *1 (S.D. Ind. July 25, 2003). In this case, Bank Midwest argues that it has shown sufficient cause because Case No. 1:04-CV-795, which involves virtually the same facts and same issues of law, is already pending before this Court. Bank

3

Midwest asserts that withdrawal of the reference will promote judicial efficiency, conserve the parties' resources, and avoid any risk of inconsistent judgments.

**A.      Bank Midwest's Motion is Untimely**

As the Trustee points out in his response, Local Bankruptcy Rule 5011(b) specifies the time for filing a motion to withdraw a reference. Pursuant to that rule, "a motion to withdraw the reference of a whole adversary proceeding or any part of an adversary proceeding shall be served and filed on or before the date on which an answer, reply or motion under Bankruptcy Rule 7012 or 7015 is first due." LBR 5011(b). Pursuant to Federal Rule of Bankruptcy Procedure 7012, the defendants had until February 13, 2005, to file their answers. Bank Midwest filed the instant motion on July 29, 2005 – more than five months after the date on which answers were due. Local Rule 5011(b) does contain a grace period, allowing a party to file a motion "not later than 15 days after service of any timely-filed pleading or paper in which the basis for the motion first arises," but Bank Midwest does not argue that it applies in this case.

Citing Auto Specialties Manufacturing Co. v. Sachs (In re Auto Specialties Manufacturing Co., 134 B.R. 227 (W.D. Mich. 1990), Bank Midwest argues that a motion to withdraw reference will be considered timely if there is no prejudice to the non-moving party. See id. at 228 n.1. The problem with Bank Midwest's reliance on Auto Specialties, however, is that the case was decided almost twelve years before Local Bankruptcy Rule 5011 became effective. Because it appears that no local rule governing the time for such motions was in effect at that time, the Auto Specialties court merely looked to prejudice as a basis for gauging whether a motion was timely filed. Here, of course, there is a rule providing a specific time limit, and prejudice is not a factor in the timeliness calculus.

4

As a back-up argument, Bank Midwest argues that the motion is timely because in order to ensure that it would not violate the automatic stay in the Teleservices and CAP bankruptcy cases, Bank Midwest was required to file motions for relief from the automatic stay in those cases before filing the instant motion. Bank Midwest points out that it filed the instant motion "promptly" after the bankruptcy court denied its motions for relief from the automatic stay. Even accepting Bank Midwest's argument that it was required to first seek lift of the automatic stay in the Teleservices and CAP bankruptcy cases, Bank Midwest has offered no reason why it delayed almost five months before moving for relief from the automatic stay. Bank Midwest filed its complaint in the Adversary Proceeding on January 14, 2005, and Teleservices and CAP filed their bankruptcy cases one week later. At that time, assuming relief from the automatic stay was in fact required, Bank Midwest knew what was required but failed to take prompt action.

**B.     Bank Midwest has Failed to Show Cause**

Although the statute does not define "cause," courts have identified a number of factors or considerations bearing upon a district court's exercise of its discretion to withdraw a reference pursuant to § 157(d). According to the Second Circuit, a court should consider the following: (1) whether the claim is core or non-core; (2) what is the most efficient use of judicial resources; (3) what is the delay and what are the costs to the parties; (4) what will promote uniformity of bankruptcy administration; (5) what will prevent forum shopping; and (6) other related factors. See In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993); accord Constant v. Wilson (In re Constant), Nos. 92-5581, 92-56045, and 92-55995, 1993 WL 501649, at *1 (9th Cir. Dec. 3, 1993) (factors to be considered include whether the proceeding is a core proceeding, judicial economy, convenience, and expertise of the court) (citing United States v. Star Route Box 1328, 137 B.R. 802,

806 (Bankr. D. Or. 1992)); Coe-Truman Techs., Inc. v. United States (In re Coe-Truman Techs., Inc.), 214 B.R. 183, 187 (N.D. Ill. 1997) (same). The Third Circuit holds that district courts should consider these factors: (1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering economical use of debtor/creditor resources; (4) expediting the bankruptcy process; and (5) the timing of the motion for withdrawal. See In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990).

The balance of the relevant factors weighs in favor of denying the motion. First, in considering whether the proceeding is a core or a non-core proceeding, the Court notes that it is not clear whether Bank Midwest, by asserting a constructive trust claim, contends that the funds at issue are or are not property of the estate. To the extent that Bank Midwest argues that the funds are not property of the estate, the proceeding would be a core proceeding. See Hoerner v. Van Setten (In re Specialty Servs., Inc.), 311 B.R. 745, 746 (Bankr. W.D. Mich. 2004) (holding that an adversary proceeding to determine whether a motorcycle was property of the estate was a core proceeding); Pension Benefit Guar. Corp. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 138 B.R. 442445 (D. Del. 1992) ("The determination of the property of the estate is one of the core proceedings arising under title 11"). Thus, the bankruptcy court would be authorized to issue final orders and judgments. See 28 U.S.C. § 157(b)(1). On the other hand, if Bank Midwest concedes that the funds are property of the estate (whether of Teleservices, Cyberco, or any other debtor to whom any portion of the funds were transferred), its request for imposition of a constructive trust will likely run headlong into the Sixth Circuit's decision in XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.), 16 F.3d 1443 (6th Cir. 1994), which holds that a constructive trust may not be imposed upon the property of a bankruptcy estate once bankruptcy is filed. Id. at 1451. The Omegas Group court

reasoned that, unlike an express trust, a constructive trust is a judicially-imposed remedy that comes into existence only when the plaintiff obtains an order or judgment imposing a constructive trust on property held by the defendant. See id. Unless a constructive trust is imposed prior to the filing of the bankruptcy petition, a bankruptcy court's imposition of a constructive trust in favor of a particular creditor would be at odds with the Bankruptcy Code's policy of maximizing the estate for the benefit of all creditors. Id. at 1451-52. Therefore, "a claim filed in bankruptcy court asserting rights to certain assets 'held' in 'constructive trust' for the claimant is nothing more than that: a claim." Id. at 1449. A creditor claiming fraud is left with the remedy of seeking a determination that the debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) but, as the Sixth Circuit acknowledged, such a remedy pales in comparison to a constructive trust. Id. at 1452. Thus, the proceeding would still be a core proceeding. Moreover, and, even if the claim were to proceed before this Court, Bank Midwest would not gain any advantage because Omegas Group would still preclude this Court from imposing a constructive trust.

Second, considerations of judicial economy and efficient administration of the bankruptcy estate counsel in favor of the bankruptcy court deciding Bank Midwest's claims. At this point, the Adversary Proceeding has advanced further than Case No. 1:04-CV-795, although not to a significant extent, but, as noted above, Case No. 1:04-CV-795 is administratively closed with respect to three of the defendants and the fourth, Horton, has not filed an answer. In contrast, all of the relevant parties are already joined in the Adversary Proceeding and several of the defendants have filed answers. Moreover, because Bank Midwest's claims involve matters closely related to the administration of the bankruptcy estate, it makes more sense to have those claims determined by the bankruptcy court. Unnecessary delay in the administration of the bankruptcy estate is therefore more

7

likely if the claims proceed in this Court.

Third, having the matter determined by the bankruptcy court will result in the most economical use of debtor and creditor resources. Given that several of the parties in the Adversary Proceeding have already filed answers and in light of the fact that Bank Midwest's claims are closely related to the administration of the bankruptcy case, in all likelihood the parties would face increased litigation expenses if this Court were to determine Bank Midwest's claims. The Court notes that this is not a situation where Bank Midwest or any other party would be required to present evidence in two different cases because the Adversary Proceeding and Case No. 1:04-CV-795 are essentially interchangeable. That is, only one case will proceed, so Bank Midwest will not be required to incur duplicate legal expenses.

Finally, the Court finds that forum shopping is not a particularly relevant consideration in this case because, as Bank Midwest notes, it filed Case No. 1:04-CV-795 prior to the time it filed the instant motion. However, the weight of the other factors discussed above demonstrates that Bank Midwest has not met its burden of demonstrating cause.[1]

---

[1] Bank Midwest cites Big Rivers Electric Corp. v. Green River Coal Co., Inc., 182 B.R. 751 (W.D. Ky. 1995), In re Sevko, Inc., 143 B.R. 114 (N.D. Ill. 1992), Wedtech Corp. v. London (In re Wedtech Corp.), 81 B.R. 237 (S.D.N.Y. 1987), and Enviro-Scope Corp. v. Westinghouse Electric Corp. (In re Enviro-Scope Corp.), 57 B.R. 1005 (E.D. Pa. 1985), as support for its claim that "a factually similar case pending in a district court constitutes sufficient 'cause' under § 157(d) for withdrawing the reference of an adversary proceeding pending in a bankruptcy court." (Bank Midwest's Br. Supp. at 2.) However, general rules are not particularly useful here because "[t]he issue of whether cause exists is largely one of individual facts and circumstances." In re Sevko, Inc., 143 B.R. at 117. The Court finds the foregoing cases distinguishable because the district court and bankruptcy cases involved the same core transactional facts but not necessarily the same parties. For example, in Big Rivers Electric Corp., the closely-related district court cases were a criminal case alleging a scheme to defraud the creditor through the payment of bribes and kickbacks and a civil action based upon federal and state law against various individuals who allegedly procured the fraudulent contract. The bankruptcy court proceeding was a motion by the debtor to assume the allegedly fraudulent coal contract, and the outcome in the criminal and/or civil case in the district court would likely have had a substantial bearing upon the motion to assume the contract in the bankruptcy court. In contrast, this case and Case No. 1:04-CV-795 involve essentially the same parties and present identical issues and there is no risk that the bankruptcy court's ruling in the Adversary Case will be inconsistent with or undermined by any ruling by any order or judgment by this Court.

### III. Conclusion

For the foregoing reasons, the Court will deny Bank Midwest's motion.

An Order consistent with this Opinion will be entered.


Dated:  October 20, 2005               /s/ Gordon J. Quist
                                     GORDON J. QUIST
                                UNITED STATES DISTRICT JUDGE